**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1591
_____

JOSE MIGUEL LOPEZ,

Appellant

v.

CORRECTIONAL MEDICAL SERVICES, INC.; LOUIS TRIPOLI;
WILLIAM ANDRADE; JAMES NEAL, M.D.;
JAMES RUMAN, R.N.; ROCK WELCH; ABU AHSAN, M.D.;
DEVON BROWN; CHARLES LEONE; WARDEN SOUTHERN STATE
CORRECTIONAL FACILITY; WARDEN OF NEW JERSEY STATE PRISON;
ST. FRANCIS HOSPITAL; JOHN DOES #1-10

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 1-04-cv-02155)
District Judge:  Honorable Noel L. Hillman

Submitted under Third Circuit LAR 34.1(a)
on April 24, 2012

Before:  SLOVITER and ROTH, Circuit Judges
and POLLAK*, District Judge

(Opinion filed:  September 26, 2012)

_____

*Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sat by designation.  Judge Pollak died on May 8, 2012; this opinion is filed by a quorum of the court pursuant to 28 U.S.C. § 46 and the Third Circuit I.O.P. 12.1(b).

**O P I N I O N**

**ROTH**, <u>Circuit Judge</u>:

This appeal relates to claims brought by a New Jersey state prisoner pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. The prisoner alleged that prison officials and employees of a company to which the state had delegated responsibility for arranging its inmates' medical care violated this right by exhibiting deliberate indifference to his serious medical needs stemming from his Hepatitis C (HCV) infection. The District Court rejected these claims and granted summary judgment to these defendants. We will affirm that judgment.

## I. **BACKGROUND**

Jose Lopez (Lopez) filed this action in 2004. At that time, he was incarcerated at Bayside Prison, a state prison in New Jersey, and had been incarcerated in various other state prisons since 1983. Between 1983 and 1996, the New Jersey Department of Corrections (NJDOC) arranged itself for the provision of healthcare to its inmates. When Lopez suffered a head injury in 1992 that required medical attention, the NJDOC had him treated at St. Francis Hospital. A spinal tap was performed at that time, which showed that Lopez had HCV. St. Francis, however, neither informed him of this diagnosis nor provided him a copy of its medical records pertaining to him.

2

In 1996, NJDOC entered into a contract with Correctional Medical Services, Inc. (CMS), pursuant to which that company would assume responsibility for arranging medical care for state inmates. From this time until 2002, Lopez required medical attention only occasionally, for routine testing and minor treatment. Then, on May 9, 2002, he started vomiting blood and was taken to the emergency room at South Jersey Hospital. Doctors there found that he had serious esophageal varices that were causing the bleeding, and they also suspected that he had HCV. He was first transferred to St. Francis for additional treatment and then discharged back to the prison infirmary on May 13th, where he was monitored until May 29th. On July 9th, Lopez returned to the infirmary because he had a nose bleed. He was at that point referred for HCV screening. He tested positive for HCV on July 23rd and learned of his condition that day. He eventually began a course of drug therapy, but because of poor results and side effects, that treatment was ultimately discontinued.

On May 7, 2004, Lopez filed a lawsuit asserting a number of claims relating to the diagnosis and treatment of his HCV. Among the defendants in this suit were various NJDOC officials sued in their individual and official capacities (NJDOC defendants), including Devon Brown, Commissioner of the NJDOC; Charles Leone, Administrator of Bayside Prison; Ronald Cathel, Administrator of Southern State Correctional Facility; and Roy Hendricks, Administrator of New Jersey State Prison. Also named as defendants were CMS and a number of its employees (CMS defendants), including William Andrade, James J. Neal, James Ruman, Rock Welch, and Abu Ahsan. Lopez's claims against these two groups of defendants included one brought under 42 U.S.C. §

3

1983 alleging that they had violated his Eighth Amendment right to be free from cruel and unusual punishment through failing to screen for HCV, failing to treat HCV, and failing to timely inform him that he had HCV. The District Court granted summary judgment to the NJDOC and CMS defendants on those claims.[1] That judgment, as it pertains to the claims brought against the NJDOC defendants, in their individual capacities, and the CMS defendants, is now presented for our review.[2]

## II. <u>DISCUSSION</u>

The District Court had federal question jurisdiction over Lopez's § 1983 claims pursuant to 28 U.S.C. § 1331, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. *Blackhawk v. Pennsylvania*, 381 F.3d 202, 206 (3d Cir. 2004). Our task is thus identical to that performed by the District Court: to determine whether there is any genuine issue of material fact in relation to Lopez's Eighth Amendment claim and whether the NJDOC and CMS defendants are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material if, under the governing substantive

---

[1] Lopez also brought a § 1983 claim against St. Francis alleging a violation of his Eighth Amendment rights. In addition, he brought claims against all defendants alleging violations of his Fourteenth Amendment right to equal protection, violations of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and common law fraud. Finally, he brought claims against just St. Francis and the CMS defendants alleging negligence, medical malpractice, and intentional and negligent infliction of emotional distress. The common law claims against St. Francis were resolved through settlement, and the defendants obtained summary judgment on all others. None of these claims is before us on appeal.

[2] On September 1, 2008, Lopez died from complications of liver disease. The administrator of his estate, his son, also named Jose Lopez (Plaintiff), substituted as the plaintiff in this action, *see* Fed. R. Civ. P. 25(a)(1), and continues in that capacity.

law, a dispute about it might affect the outcome of the suit; there is a genuine issue as to it if there is evidence in the record from which a reasonable jury could find in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). Finally, we note that we are free to affirm the District Court's judgment on grounds different from those upon which it relied. *In re Mushroom Transp. Co.*, 382 F.3d 325, 344 (3d Cir. 2004).

Plaintiff is correct that the Eighth Amendment requires that prisoners receive access to basic medical treatment. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order to show a violation of Lopez's right to such treatment, however, Plaintiff must identify "acts or omissions [on the part of the defendants] sufficiently harmful to evidence deliberate indifference to [Lopez's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A defendant exhibits such deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2002) (citation omitted). Mere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner, though, do not constitute deliberate indifference to serious medical needs. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d. Cir. 2004). Instead, we have found deliberate indifference to a prisoner's serious medical needs only where a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment. *Rouse*, 182 F.3d at 197. A deliberate indifference claim can also be made out against a supervisor, which requires showing that "(1) [the

5

supervisor's policies] created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy []." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d. Cir. 2001).

### A. NJDOC Defendants

We find that the NJDOC defendants were entitled to summary judgment on Plaintiff's deliberate indifference claim. These defendants can only be held liable under § 1983 for a deprivation of a constitutional right if they had some "personal involvement" in it. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff presents no evidence that any of the named NJDOC defendants had such personal involvement in the alleged unconstitutional failures to adequately diagnose, treat, and inform Lopez of his HCV. With respect to defendant Roy Hendricks, the only connection to Lopez is his service as Administrator of New Jersey State Prison, where Lopez was incarcerated between 1983 and 1996. Hendricks, however, did not assume that role until 1998, well after Lopez's departure; he thus could not possibly have had any personal involvement in any actions, omissions, or policies that violated Lopez's Eighth Amendment rights. Defendant Ronald Cathel's only connection to Lopez is similar – he began serving as Administrator of Southern State Correctional Facility two years after Lopez's imprisonment there ended, and he therefore also could not have had any personal involvement in the alleged deprivation of Lopez's Eighth Amendment rights. Defendant Devon Brown became Commissioner of the NJDOC in 2002, while Lopez was a state inmate and just months before he received his HCV diagnosis, and defendant Charles

6

Leone likewise became Administrator of Bayside Prison in 2002, while Lopez was a prisoner there. There is no evidence in the record, however, indicating that either of these men were personally involved – through acts, omissions, or policies – in the allegedly deficient diagnosis and treatment of Lopez's HCV. They, too, therefore cannot be held liable for violating Lopez's Eighth Amendment rights.

## B. *CMS Defendants*

We find that the District Court's grant of summary judgment to the CMS defendants was also appropriate. There is no evidence that defendants William Andrade, James J. Neal, James Ruman, or Rock Welch ever had any personal involvement with Lopez's actual medical care. Though defendant Abu Ahsan did participate in Lopez's medical care, this involvement began only after Lopez learned of his HCV and was receiving treatment for it, and is thus irrelevant to Plaintiff's claims. As a result, these defendants cannot be held liable for actually failing to screen, treat, or inform Lopez of his HCV. Plaintiff can succeed in his claims against them only if he can show that they were responsible for some policy that resulted in Lopez's injury. Because CMS cannot be held responsible for the acts of its employees under a theory of respondeat superior in a § 1983 action, it too can only be held liable on the basis of some policy it had that caused the alleged violation of Lopez's Eighth Amendment rights. *See Natale*, 318 F.3d at 583-84.

Plaintiff alleges that CMS had policies not to screen or treat inmates for HCV and not to inform inmates that were known to have HCV of their diagnoses, all in order to avoid the costs of testing and treatment. With respect to an alleged policy not to screen

for HCV, however, the record shows that, actually, thousands of inmates were tested for the infection in the years at issue. Though Plaintiff objects to CMS's having a policy of screening only inmates who presented with both symptoms of HCV and evidence of HCV as the cause rather than an alternate policy under which all inmates with risk factors for an infection would be screened, that choice, as a medical judgment, cannot serve as the basis of a deliberate indifference claim. *See Estelle*, 429 U.S. at 107. To support his next allegation that CMS had a policy of denying appropriate treatment to inmates that it knew to be infected with HCV, Plaintiff relies on a "fact sheet" allegedly distributed in 1998 by Louis Tripoli, a CMS official. Plaintiff claims that this document was distributed to "discourage the overtreatment of HCV" and that it advocated for allocating resources to the treatment of other diseases rather than to the treatment of HCV. This document does not appear in the record. Even if it did, though, it would not sustain Plaintiff's argument because there is no evidence that Tripoli's suggestions were ever translated into CMS policy. Finally, Plaintiff claims that a CMS policy of not informing inmates with HCV of their condition is evidenced by the fact that, in 2002, it was allegedly discovered that many inmates were unaware that their medical records indicated that they had HCV. There is no evidence, however, of a CMS policy specifically designed to bring about this result, and we therefore reject Plaintiff's argument.

We thus find that there is no evidence to support Plaintiff's claim that CMS had policies to deny prison inmates testing and treatment for HCV and to further intentionally

8

keep infected inmates uninformed of their HCV status. As a result, Plaintiff cannot

prevail on his Eighth Amendment claims against any of the CMS defendants.

## III. CONCLUSION

For the reasons explained above, we will affirm the District Court's judgment.[3]

---

[3] Plaintiff also contends that the District Court erred in denying his motion for reconsideration. This motion, filed 174 days after the District Court granted summary judgment to all defendants on Plaintiff's Eighth Amendment claims, was untimely, and we therefore reject that argument. *See* D.N.J. L. Civ. R. 7.1(i).