IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francis B. Harris,　　　　　　　　　:
　　　　　　Appellant　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　　: No. 2083 C.D. 2016
　　　　　　　　　　　　　　　　　　: Submitted: April 13, 2017
Pennsylvania Department of　　　　　:
Corrections　　　　　　　　　　　　:


BEFORE:　HONORABLE ROBERT SIMPSON, Judge
　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI　　　　　　　　　FILED: May 17, 2017


　　　　　Francis B. Harris (Harris) appeals the Court of Common Pleas of Greene County's (trial court) dismissal of his Petition for Review[1] (Petition) alleging that the Commonwealth of Pennsylvania, Department of Corrections and a number of its employees and agents (collectively, the Department) violated his constitutional and statutory rights and caused him harm by frustrating his ability to purchase extra wide boots to alleviate his pain from plantar fasciitis.

---

[1] Harris initially filed his Petition with this Court but we transferred it to the trial court because he sought money damages, giving the trial court original jurisdiction. *See Fawber v. Cohen*, 532 A.2d 429, 432-33 (Pa. 1987).

## I.

The facts as alleged in the Petition are as follows. Harris is currently incarcerated for a capital crime at the State Correctional Institution at Greene (SCI-Greene). He complained of foot pain to the medical staff at SCI-Greene and was diagnosed with plantar fasciitis.[2] He was provided orthopedic inserts but they did not comfortably fit in his state-issued boots. Other inmates who experienced similar problems were provided night splints, orthotic shoes or were given permission to order Timberland boots. Harris requested medical shoes from Defendant Dr. Jin of SCI-Greene's medical staff who denied his request, saying, "You have big feet, that's not a medical problem." (Petition for Review, p. 7.) Harris alleges that when he reminded him that he had plantar fasciitis, Dr. Jin responded, "So what, everybody's got plantar fasciitis?" *Id.* He was then informed that if he wanted, he could purchase a pair of Timberland boots.

Harris then submitted a request to be allowed to order a pair of Timberland boots from an outside vendor to Defendant John McAnany (McAnany), a nursing supervisor on the medical staff. McAnany told him to request an approval form from the doctor who was treating him. Harris received verbal confirmation from Dr. Jin that he could order the boots but when he attempted to do so, Stephen Longstreth (Longstreth), a unit manager, told Harris he would need a signed approval form from a member of the medical staff to do so. After requesting an approval form to order the boots, Dr. Jin informed Harris that no such approval form existed. Harris

---

[2] Plantar fasciitis is inflammation in the sole of the foot. *Fasciitis* and *Plantar*, *Stedman's Medical Dictionary*, pp. 567 & 1210 (25th ed. 1990).

again attempted to order the boots but, because he did not have written permission, his order was not placed.

When Harris went to the medical infirmary again complaining of the pain in his foot, he requested night splints. A member of the medical staff informed him that night splints were not appropriate for him but that he had been approved to purchase rigid sole boots for over six months. Harris informed Longstreth and was told once again that the approval needed to be in writing.

Harris filed a grievance against Longstreth, insisting that the medical staff did not have the type of form the unit manager requested. He received an Initial Response from Defendant Nedra Grego (Grego), a residential nurse (RN) Supervisor, informing Harris that the delay was due to a miscommunication between the RN staff and the unit manager:

> Mr. Longstreth was under the impression that a Health Care Items Receipt would be issued. Since Medical is not issuing the boots to you a Health Care Items Receipt would not be done…. If you would have signed up for sick call or wrote a request to the RN Supervisors, this issue would have been taken care of.[3]

Grego resolved the issue and Harris received medical approval to order the boots.

---

[3] Record (R.) Item No. 20, Copy of the Index of Documents mailed to Francis B. Harris and the Pennsylvania Department of Corrections, Exhibit Y, Initial Response to Grievance No. 575764 filed 07/08/2015, dated 07/28/2015.

3

Despite receiving approval to purchase the boots, Harris appealed to the Facility Manager, Defendant Robert Gilmore (Gilmore), to voice his dissatisfaction with the process. He alleged that Longstreth refused to "simply pick [] up his phone and [get] the info needed as he [had] done for other inmates but refused to do for [Harris]."[4] Harris also alleged that by not providing approval to purchase the boots for six months showed deliberate indifference to his pain. He received a response from Gilmore noting that the issue was the result of a miscommunication and it had been resolved.

Harris then appealed to the Secretary's Office of Inmate Grievances and Appeals[5] and received the following response from Dorina Varner, the Chief Grievance Officer:

> Your concern of not being provided proper medical care regarding the approval of new boots was reviewed by the staff of the Bureau of Health Care Services. They reviewed the medical record and determined that the medical care provided was reasonable and appropriate. The findings of the review concur with the superintendent's response. No evidence of neglect or deliberate indifference has been

---

[4] R. Item No. 20, Copy of the Index of Documents mailed to Francis B. Harris and the Pennsylvania Department of Corrections, Exhibit Z, Appeal to Facility Manager of Grievance No. 575764, dated 07/31/2015.

[5] The language on the Final Appeal Decision provides that "[t]he following response is being provided based on a review of the entire record of this grievance." (R. Item No. 20, Copy of the Index of Documents mailed to Francis B. Harris and the Pennsylvania Department of Corrections, Exhibit EE, Final Appeal Decision of Grievance No. 575764, dated 10/06/2015).

found. Therefore, your grievance appeal to this office is denied as well as your requested relief.[6]

Harris then purchased the boots, but after receiving them, he realized that he had been forced to pay $13.25 more for the boots than other inmates. When he requested a refund of the difference, Defendant Victor Santoya (Santoya) confiscated the boots purportedly because he refused to pay for the boots. The amount for the boots was eventually credited to his commissary account. In his brief, Harris states that after the boots were confiscated, he was told he did not have to pay for the boots because he was going to be issued a pair of orthotic shoes. Harris contends that confiscation of the boots was an act of retaliation for filing a grievance.

In his Petition, Harris also states that his plantar fasciitis causes him to experience pain in the morning that he cannot go to "morning yard" for exercise. He contends that the Department failed to accommodate his condition by failing to provide him with a medical permission slip allowing him to go to "afternoon yard."

Harris alleges that the Department's conduct in preventing him from purchasing boots or failing to provide him with orthotic shoes to alleviate the pain from his plantar fasciitis constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution;[7] his equal protection rights were

---

[6] R. Item No. 20, Copy of the Index of Documents mailed to Francis B. Harris and the Pennsylvania Department of Corrections, Exhibit EE, Final Appeal Decision of Grievance No. 575764, dated 10/06/2015.

[7] The facts pled in Harris's Petition give rise to an action under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must 1) allege a violation of rights secured by the United States Constitution and/or the laws of the United States, and 2) show that the alleged deprivation **(Footnote continued on next page…)**

5

violated because he was treated differently than other inmates who had plantar fasciitis; not permitting him to go to "afternoon yard" violated Section 202 of the Americans with Disabilities Act (ADA);[8] the seizing of his boots constituted unlawful retaliation and theft by deception;[9] and his treatment constitutes medical malpractice and negligence. Harris requested an order directing the Department to adhere to the approved medical plan to treat his plantar fasciitis, costs associated with the filing of this lawsuit, as well as an award of $97,000 in punitive damages.

Before the Commonwealth filed a responsive pleading, the trial court dismissed the Petition for failure to state a claim on which relief may be granted, apparently under Section 6602(e)(2) of the Prison Litigation Reform Act (PLRA), Act of June 18, 1998, P.L. 640, No. 84, *as amended*, 42 Pa.C.S. § 6602(e)(2), which provides:

---

**(continued…)**

was committed by a person acting under color of state law. *Anelli v. Arrowhead Lakes Community Association, Inc.*, 689 A.2d 357 (Pa. Cmwlth. 1997). Pursuant to the Eighth Amendment, U.S. Const. amend. VIII, "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[8] Title II of the ADA, 42 U.S.C. § 12132, provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

[9] Harris alleged that the Department engaged in theft by deception when it confiscated his boots and refused to issue him a refund for the amount paid. However, Harris dropped that claim after his commissary account was credited with the amount of the boots.

6

> Notwithstanding any filing fee which has been paid, the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant, if the court determines…[t]he prison conditions litigation is frivolous or malicious or fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief.

This appeal followed.[10]

## II.

In this appeal, Harris contends that the trial court erred in dismissing his Petition without giving him an opportunity to amend to correct any defects in an effort to make out a cause of action. In *Pelzer v. Wetzel,* 101 A.3d 142 (Pa. Cmwlth. 2014), we held that it was improper not to allow an inmate to amend his complaint after it had been dismissed on preliminary objections.[11] While that case involved dismissal on the basis of preliminary objections, when the trial court dismisses an action under Section 6602(e)(2) of the Prison Litigation Reform Act, it has the same effect. Given that the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party,

---

[10] In reviewing a claim that a plaintiff has failed to set forth a cause of action, we accept as true all well-pled material allegations in the petition, as well as all inferences reasonably deducible therefrom. *Aviles v. Department of Corrections*, 875 A.2d 1209 (Pa. Cmwlth. 2005). However, conclusions of law and unjustified inferences are not so admitted. *Griffin v. Department of Corrections*, 862 A.2d 152 (Pa. Cmwlth. 2004).

[11] Pa.R.C.P. No. 1028(c)(1) provides that "[a] party may file an amended pleading as of course within twenty days after service of a copy of preliminary objections…."

when we dismiss a claim, it is understood that we also find that it would not be possible for Harris to make factual amendments that would set forth a cause of action.

## A.

Harris contends that the trial court erred in finding that he did not make out a claim that the Department violated the Eighth Amendment by denying him the opportunity to purchase boots or providing him with orthotic medical shoes to alleviate the pain from his plantar fasciitis.

The Eighth Amendment prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the United States Supreme Court found that "deliberate indifference to serious medical needs of prisoners constitutes" the unnecessary and wanton infliction of pain. This is true whether the indifference is by "prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. However, an inadvertent failure to provide adequate medical care cannot be said to rise to the standard of unnecessary and wanton infliction of pain or to be "repugnant to the conscience of mankind." *Id.* at 105. A complaint that a physician has been negligent in diagnosing or treating a medical condition "does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106.

In order to state a claim, a prisoner must allege facts or omissions sufficiently harmful to show (1) deliberate indifference or (2) serious medical needs. *Id.* A defendant exhibits deliberate indifference if he "knows of and disregards an

8

excessive risk to inmate's health or safety." *Lopez v. Correctional Medical Services, Inc.*, 499 Fed. Appx. 142, 146 (3d Cir. 2012). Furthermore, "[m]ere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner … do not constitute deliberate indifference to serious medical needs." *Id.* With respect to the second prong of the standard, a "serious medical need" exists if a prison official's act or omission results in "the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1970).

Even if we assume Harris' plantar fasciitis is a serious medical need, he has not shown deliberate indifference to that need. Harris admits that the medical defendants issued him orthopedic inserts to address the pain caused by his plantar fasciitis. His brief suggests that the Department has stated that it is going to provide him with medical orthotics. With respect to the nonmedical defendants, the miscommunication with regard to the correct paperwork needed to order the boots was eventually solved and Harris was allowed to purchase his boots. In any event, this conduct "where the right hand does not know what the left hand is doing" is not the deliberate indifference necessary to raise an Eighth Amendment claim.

Because Harris did not establish that the defendants were deliberately indifferent to his pain, the trial court did not err by dismissing his claim for failure to state a cause of action based on cruel and unusual punishment.

**B**.

Harris also contends that he made out a claim that his equal protection rights were violated because he was treated differently from other inmates when he

was denied the opportunity to purchase a pair of boots while other inmates suffering from plantar fasciitis were offered night splints, medical shoes or were allowed to purchase boots from an outside vendor. Harris also argues that he was forced to pay an extra $13.25 for his boots compared to other inmates.

The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike. *Iseley v. Beard*, 841 A.2d 168 (Pa. Cmwlth. 2004). Claims of disparate treatment "must be supported by factual allegations." *Mobley v.* Coleman, 110 A.3d 216, 222 (Pa. Cmwlth. 2015). To make out a claim, the plaintiff must show "intentional discrimination against [him] because of [his] membership in a particular class, not merely that [he] was treated unfairly as an individual." *Handley v. Phillips*, 715 F.Supp. 657, 673 (M.D. Pa. 1989). Furthermore, a plaintiff must show that there is no "rational basis" for being treated differently from other similarly-situated individuals. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1993).

Harris alleges that similarly-situated inmates with plantar fasciitis were allowed night splints, medical shoes or the ability to purchase boots and that they were not forced to pay extra. Treatment decisions are necessarily idiosyncratic to a particular individual, which would mean that equal protection does not apply because it is rational to treat each patient differently. In any event, Harris was allowed to purchase boots and was later told that he would be given orthotics and that night splints were not appropriate. As to whether he had to pay an extra $13.25 for his boots compared to other inmates, even if true, this matter is moot since Harris admits the money for the shoes, including the extra $13.25, has been deposited in his

10

account. The trial court did not err in dismissing his appeal for failing to set forth a cause of action under the Equal Protection Clause.

## C.

Harris further argues that he made out a claim that the Department violated his rights under the ADA because it failed to reasonably accommodate his disability caused by planter fasciitis[12] by refusing to grant him permission to go to the yard in the afternoon.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in the ADA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. §12102(1)(A). The ADA defines "major life activities," in

---

[12] In *Bannull v. Colvin*, No. 3:11-CV-02150, 2013 WL 1653573, at *2 (M.D. Pa. 2013), the District Court described "plantar fasciitis" as "involve[ing] pain and inflammation of a thick band of tissue, called the plantar fascia, that runs across the bottom of [the] foot and connects [the] heel bone to your toes. Plantar fasciitis is one the most common causes of heel pain. **Plantar fasciitis commonly causes stabbing pain that usually occurs with [the] very first step in the morning. Once your foot limbers up, the pain of plantar fasciitis normally decreases, but it may return after long periods of standing or after getting up from a seated position.** It is commonly thought of as being caused by a heel spur, but research has found that this is not the case. On x-ray, heel spurs are seen in people with and without plantar fasciitis. Risk factors for plantar fasciitis include tighter calf muscles that make it difficult to flex the foot and bring the toes up toward the shin, obesity, a very high arch, repetitive impact activity and new or increased activity." (Citations and internal quotations omitted.) (Emphasis added.)

general, as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, *walking*, *standing*, lifting, bending . . . and working." 42 U.S.C. §12102(2)(A) (emphasis added.) Additionally, the definition of "disability" for purposes of coverage under the ADA is construed in favor of broad coverage. 42 U.S.C. §12012(4)(A).

In *Goodman v. Georgia*, 546 U.S. 151 (2006), the United States Supreme Court held that a state prisoner may sue the state for monetary damages under the ADA. In order to establish a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual with a disability; (2) he was denied the opportunity to participate in or benefit from the programs, services or activities of a public entity; and (3) the denial of benefits was because of his disability. *See also Watson v. Department of Corrections*, 990 A.2d 164, 168 (Pa. Cmwlth. 2010) (holding that in order to establish a successful claim, an inmate needed to allege that the Department discriminated against him because of his disability).

Harris asserts that his plantar fasciitis is worse in the morning when he is scheduled to participate in the yard causing him to remain in his cell rather than risk the pain. Because he is unable to participate in a public program, *i.e.*, the yard, Harris argues that the Department did not make a reasonable accommodation by giving him permission to attend "afternoon yard" when his pain is diminished.

This allegation is sufficient to make out a prima facie claim that Harris was not given an opportunity to participate in the benefits of a program – yard time –

12

which is substantial because yard time is limited time since he is incarcerated for a capital offense. Given that Harris claimed his plantar fasciitis was worse in the morning and got better as the day went on and that the condition was so severe that he could not go to morning yard, he has set forth a prima facie case under the ADA that, if proven, the Department failed to make a reasonable accommodation for his disability, and we vacate the trial court's dismissal of this claim.[13]

## D.

Harris also argues that he made out a claim that the confiscation of his Timberland boots was retaliation for filing grievances against Longstreth and Santoya.

A prisoner bringing a retaliation claim against prison officials must prove three things: (1) that the conduct the inmate engaged in was constitutionally protected; (2) that prison officials took adverse action; and (3) that the protected conduct was a substantial or motivating factor for the adverse action. *Yount v. Department of Corrections*, 966 A.2d 1115, 1120 (Pa. 2009). To demonstrate that he suffered an adverse action, a plaintiff must show that the action is one which is "sufficient to deter a person of ordinary firmness from exercising" his constitutional

---

[13] Under 42 Pa.C.S. § 6602(e)(2), the trial court can dismiss an action based on a valid affirmative defense. Section 7 of the federal PLRA requires inmates first to pursue all challenges "with respect to prison conditions" through the highest level of the "available" administrative procedures prior to filing a suit under the ADA or any other federal law. 42 U.S.C. § 1997e(a). The Department Policy No. DC-ADM 006 details how an inmate can request an accommodation and how the SCI and Department will process that request. There is no mention in Harris's Petition that he filed such a grievance. The trial court does not mention this as reason for dismissal, and the Department does not refer to it in its brief.

rights. *Id.* at 1121. If the prisoner meets this three-part prima facie test, the burden shifts to the institution to rebut the presumption by establishing that the same adverse action would have occurred absent the protected conduct for reasons reasonably related to a legitimate penological interest. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

To make out a retaliation claim, the plaintiff must allege facts that sustain an inference that the adverse action was motivated by the constitutionally-protected conduct. As an example, in *Richardson v. Wetzel*, 74 A.3d 353 (Pa. Cmwlth. 2013), an inmate brought a retaliation action against the Department, stating that after he wrote a letter to the IRS, he was brought up on prison misconduct charges which were fabricated. Although the inmate claimed the charges were fabricated as an act of retaliation against him, we held that the complaint did not contain any factual averments that could sustain an inference that the Department purposefully falsified the misconduct charges because of his communication with the IRS, and we sustained the trial court's dismissal of the action for failure to state a claim. *Id.* at 358.

Under those standards, the Petition does not make out a prima facie case that the confiscation of Harris's Timberland boots resulted from the filing of any grievance. The Petition gives several different reasons as the basis for the claim: Harris was retaliated against because he requested a refund of $13.25; the boots were confiscated because he refused to pay for them, which could not be the case since Harris paid for the boots prior to placing the order; and the boots were confiscated because Harris was told he was going to be given orthotic shoes free of charge, and

14

his account was credited with the amount he paid for the Timberland boots. None of those factual allegations make out a claim that the boots were confiscated because Harris filed a grievance. Because Harris failed to make out a prima facie case of retaliation, the trial court's dismissal of this claim was proper.

**E.**

Harris's Petition also does not make out a claim that the conduct of SCI-Greene's medical staff in delaying permission for the boots fell within the medical professional exception to immunity. Immunity has been waived for "[a]cts of health care employees of the Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." 42 Pa. C.S. § 8522(b)(2).

However, Harris admits in his Petition that the medical staff gave him permission and that it was the non-medical employees who frustrated his ability to purchase the boots. Because those other individuals are not health care employees, their actions are not within the medical professional exception to immunity. *See Moore v. Department of Justice*, 538 A.2d 111 (Pa. Cmwlth. 1988); *Steinberg v. Department of Public Welfare,* 405 A.2d 1135 (Pa. Cmwlth. 1979).

In any event, in Pennsylvania, a plaintiff in any action based upon an allegation that a licensed professional deviated from the acceptable standard of professional care must file a certificate of merit that states either:

> An appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the

15

> treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R.C.P. No. 1042.3(a). Because Harris failed to file a certificate of merit with regard to his professional liability claim, the trial court properly dismissed this claim.

## F.

Finally, Harris alleges that the non-medical defendants were negligent in their acts which prevented him from purchasing boots to alleviate the pain in his foot.

Except where the legislature specifically waives immunity, the Commonwealth, and employees acting within the scope of their duties, are immune from negligence suits. 42 Pa. C.S. § 8522(a). None of the conduct of the non-medical defendants in this action falls within any exception to immunity where sovereign immunity has been waived. Accordingly, the trial court correctly found that Harris could not maintain his negligence claim against the non-medical defendants.

For the reasons above, we affirm the trial court's order with the exception of Harris's ADA claim, which we reverse and remand to the trial court for the Department to file a responsive pleading to the remaining claim.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francis B. Harris,                :
               Appellant     :
                              :
         v.              : No. 2083 C.D. 2016
                              :
Pennsylvania Department of    :
Corrections                      :

# **O R D E R**

AND NOW, this 17th day of May, 2017, the Order of the Court of Common Pleas of Greene County in the above-captioned case is affirmed with the exception of Appellant Francis B. Harris's Americans with Disabilities Act claim which is reversed, and this matter is remanded to the trial court for the Pennsylvania Department of Corrections to file a responsive pleading to the remaining claim.

Jurisdiction relinquished.

_____
DAN PELLEGRINI, Senior Judge